UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JIMMY DAN LEFTWICH, et al.,

     Plaintiffs,               Case No. 20-10881

v.                          Honorable Victoria A. Roberts

MARK DRISCOLL, et al.,

     Defendants.

_____/

## ORDER: (1) GRANTING IN PART AND DENYING IN PART BAUGH'S MOTION FOR SUMMARY JUDGMENT [ECF No. 54]; (2) GRANTING IN PART AND DENYING IN PART DRISCOLL AND TRENTON'S MOTION FOR SUMMARY JUDGMENT [ECF No. 61]; AND (3) GRANTING MCINCHAK AND GIBRALTAR'S MOTION FOR SUMMARY JUDGMENT [ECF No. 60]

## I. INTRODUCTION

Police responded to a 911 call of "shots fired." Shortly after they arrived and within a three to four second time span, police officers heard plaintiffs' front door open; heard the racking of a gun; gave a verbal command to Plaintiff Jimmy Dan Leftwich ("Leftwich") to "see [his] hands"; and fired six shots at Leftwich and into his home. At no point did they announce themselves as police officers. They were not even certain they were at the home for which they received the 911 call.

There is no doubt that defendants found themselves in a tense, rapidly evolving situation. The Court accepts them at their word that they

believed there was an immediate threat to their safety. Because of the situation they found themselves in, defendants say they are entitled to qualified immunity.

The Court disagrees.  Genuine, material questions of fact remain as to the objective reasonableness of the deadly force used by Defendants Driscoll and Baugh.  Those questions include whether Leftwich "racked" his firearm/ "chambered" a bullet; whether the sound of a bullet being chambered was sufficient to justify the shooting of Leftwich; whether Leftwich pointed a weapon at officers; and whether officers gave Leftwich sufficient time to respond to their commands to show his hands. What happened in those split seconds – and whether Leftwich posed an imminent threat to defendants – is disputed by the parties.

The Court viewed the evidence in the light most favorable to plaintiffs and **DENIES** Driscoll's and Baugh's summary judgment motions on plaintiffs' excessive force claim and **GRANTS** them – and the other defendants' summary judgment motions – in all other respects.

## II.    BACKGROUND

Leftwich and his wife, Lisa Leftwich ("Mrs. Leftwich"), bring this 42 U.S.C. § 1983 action against the City of Trenton ("Trenton"), Trenton police officer Mark Driscoll ("Driscoll"), the City of Gibraltar ("Gibraltar"), Gibraltar

Police Department Sergeant Stephen McInchak ("McInchak"), and

Rockwood police officer William Baugh ("Baugh").  Their claims arise from

activities on the night of May 10, 2019.

At approximately 10:00 p.m. that evening, Alan Harris ("Harris") called

the Gibraltar Police Department and reported that his next-door neighbor

Leftwich had fired a gun off of his porch numerous times and appeared

drunk.  Harris did not know Leftwich's address or his name, but he said the

house was to the right of his when looking at the front door, and there was

a white pickup truck in the driveway.

Gibraltar dispatched McInchak and officer Zach Phillips ("Phillips") –

the only two Gibraltar officers on duty – to the scene with the information

Harris provided, and requested assistance from Rockwood and Trenton

police departments under a mutual aid agreement.  Baugh and Driscoll

responded to the scene to assist McInchak and Phillips.  McInchak directed

the officers to respond with their patrol rifles.

All four officers arrived separately.  McInchak approached from the

east, parked his car several doors down from Harris' address, and made

his way to the front of Harris' home to speak to Mr. Harris.  Phillips

approached from the west and parked his car several doors away from

Harris' and plaintiffs' homes.  McInchak told Phillips to wait until Driscoll

and Baugh arrived at the scene.  Once they arrived, Phillips, Driscoll, and

Baugh began walking in the direction of McInchak and plaintiffs' home.

Although not known by the officers at the time: (1) plaintiffs' house

has a driveway on each side and a detached garage to the left of the house

that sits close to Harris' house; and (2) the white pickup truck was parked in

the driveway in front of the detached garage, right near Harris' house.

As Phillips, Driscoll, and Baugh walked toward McInchak, they saw

someone standing next to the white truck whom they believed was the

"subject."  The officers stopped – unknowingly – in front of the door to

plaintiffs' residence to try to get a better view of the white truck and Harris'

house.

The officers then heard people talking near the front door inside

plaintiffs' home.  Driscoll and Baugh moved to the left of plaintiffs' front

door, and Phillips moved to the right of the door.  The officers were

approximately 6 to 8 feet away from plaintiffs' front door

Leftwich heard noise outside, opened his front door with his gun in his

hand.  The officers testified that they heard what sounded like the racking

of a gun.  Baugh and Driscoll testified that Leftwich stepped onto the porch

and pointed his gun at Phillips.  They say that when they saw this, they

ordered Leftwich to "see [his] hands."  Right when the officers finished

4

saying "hands," Baugh and Driscoll fired six rounds at Leftwich and into his home. Baugh fired once; Driscoll fired five times.  One shot grazed Leftwich's head, and Leftwich says his left hand and neck were also injured.  Leftwich fell and/or retreated into his home.

Between three to four seconds elapsed from the time Leftwich opened his door and the officers fired six times.  No time elapsed between the time the officers commanded Leftwich to show his hands and when they fired their weapons; these two things happened simultaneously.

Leftwich denies racking his gun.  He says he was holding his gun down along the side of his leg, and that he never raised his gun or had an opportunity to step onto his porch before the officers shot him.  Phillips testified that he did not see Leftwich point a gun at him.

Police transported Leftwich to the hospital, and the hospital released him that same evening.  Mrs. Leftwich was uninjured.

Leftwich pled guilty to two firearms offenses and was sentenced to one year in jail.

Officers found Leftwich's gun on the entryway floor with one round in the chamber and no magazine in it.

Baugh wore a body camera that evening. However, the video is too dark to tell where or how Leftwich held his gun or to see Leftwich's other movements/actions.

Plaintiffs filed suit in April 2020.

They pled three federal causes of action against Driscoll, McInchak, and Baugh (the "Individual Defendants"): (1) 42 U.S.C. § 1983 (Count I); (2) wrongful detention and arrest in violation of the Fourth Amendment (Count II); and (3) a substantive due process violation (Count III). They also pled three state law causes of action against all defendants: (1) intentional infliction of emotional distress (Count VII); (2) false arrest and imprisonment (Count VIII); and (3) gross negligence (Count IX). Finally, they pled municipal liability against Trenton and Gibraltar (Count IV); supervisory liability against three "John Doe Police Supervisor Defendants" (Count V); and assault and battery against Driscoll and Baugh (Count VI).

Before the Court are defendants' three summary judgment motions – Baugh's [ECF No. 54]; Gibraltar and McInchak's [ECF No. 60]; and Trenton and Driscoll's [ECF No. 61]. The motions are fully briefed; a hearing is unnecessary.

Defendants move for summary judgment on all claims. Each defendant concurs with and adopts by reference the arguments made by

other defendants.  Therefore, unless an argument applies to only certain
defendants, the Court refers to defendants' arguments together.

## III.   SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), "[t]he Court shall grant
summary judgment if the movant shows that there is no genuine dispute as
to any material fact and the movant is entitled to judgment as a matter of
law."  The movant bears the initial burden to inform the Court of the basis
for its motion; it must identify particular portions of the record that
demonstrate the absence of a genuine dispute as to any material fact.
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant satisfies
its burden, the non-moving party must set forth specific facts showing a
genuine issue for trial.  *Id*. at 324.  Unsupported, conclusory statements are
insufficient to establish a factual dispute to defeat summary judgment, as is
the "mere existence of a scintilla of evidence in support of the [non-
movant's] position"; the evidence must be such that a reasonable jury could
find in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986);
*Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

In deciding a summary judgment motion, the Court "views the factual
evidence and draws all reasonable inferences in favor of the nonmoving
party."  *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

7

The Court need only consider the cited materials, but it may consider other evidence in the record.  Fed. R. Civ. P. 56(c)(3).  The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 249.

## IV.   ANALYSIS

### A.   Abandoned Claims

On March 3, 2021, plaintiffs voluntarily dismissed the three John Doe Police Supervisor Defendants.  In doing so, they abandoned their supervisory liability claim (Count V).

In response to defendants' motions, plaintiffs say they only have two constitutional violations against the Individual Defendants: (1) excessive force in violation of the Fourth Amendment; and (2) violation of their Fourth Amendment right to be free from unlawful entry into their home.  Plaintiffs failed to respond to or address their unlawful detention and arrest claim (Count II) and their substantive due process claim (Count III).  Accordingly, plaintiffs abandoned those claims.  *See Alexander v. Carter for Byrd*, 733 Fed. Appx. 256, 261 (6th Cir. 2018).

Plaintiffs also fail to respond to or address: (1) defendants' argument that their official capacity claims are equivalent to a suit against the

8

government entity and therefore should be dismissed as redundant/ duplicative; and (2) McInchak and Gibraltar's claim that they are entitled to governmental immunity with respect to the state law claims (Counts VII – IX).  Plaintiffs abandoned those claims.  *See id.*

The Court DISMISSES all abandoned claims – i.e., Counts II, III and V in their entirety; and Counts VII – IX against McInchak and Gibraltar.

The remaining claims are:

Count I: Fourth Amendment Unlawful Entry and Excessive Force – against McInchak, Baugh, and Driscoll

Count IV: Municipal Liability – against Gibraltar and Trenton

Count VI: Assault and Battery – against Driscoll and Baugh

Count VII: Intentional Infliction of Emotional Distress – against Driscoll, Trenton, and Baugh

Count VIII: False Arrest and Imprisonment – against Driscoll, Trenton, and Baugh

Count IX: Gross Negligence – Driscoll, Trenton, and Baugh

**B.   Count I:  Fourth Amendment Unlawful Entry and Excessive Force** (against McInchak, Baugh, and Driscoll)

### i. Excessive Force Claim against Baugh and Driscoll

Genuine issues of material fact exist which preclude the Court from deciding whether Baugh and Driscoll's use of deadly force was reasonable under the circumstances for purposes of qualified immunity.  While the

doctrine protects all but the plainly incompetent officers or those who knowingly violate the law, *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011), plaintiffs must prove that the alleged violation of their rights was obvious not just to the average reasonable officer, but to the least reasonable officer, *see Messerschmidt v. Millender*, 565 U.S. 535, 546-47 (2012). Moreover, the Court "must judge the reasonableness of the use of force from the perspective of a reasonable officer on the scene and not through the lens of 20/20 hindsight, allowing for the fact 'that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'"  *Mullins v. Cyranek*, 805 F.3d 760, 765–66 (6th Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).

There is disagreement over what actually transpired, making the qualified immunity decision premature at this juncture.  The Court denies summary judgment to Baugh and Driscoll on plaintiffs' excessive force claim.

### ii.  Fourth Amendment Claims against McInchak

No questions of fact exist regarding plaintiffs' Fourth Amendment claims against McInchak.

McInchak says he is entitled to summary judgment on plaintiffs' excessive force and unlawful entry claims because he was not one of the officers who fired at them.  The Court agrees.

Plaintiffs say although McInchak did not shoot at them, he has supervisory liability because he: (1) was Driscoll and Baugh's supervisor; (2) directed the officers to take out their rifles; (3) did not call Leftwich to discuss the situation; and (4) did not instruct the officers to put away their rifles and/or stand down while he spoke to Harris.

For starters, plaintiffs did not plead supervisory liability against McInchak. But even if they did, McInchak would be entitled to summary judgment because plaintiffs fail to: (1) show McInchak, as a member of a different police department than Driscoll and Baugh, was Driscoll or Baugh's supervisor; and (2) present evidence that McInchak authorized, approved, or knowingly acquiesced to the actions of Baugh and Driscoll, *see Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020) (citation omitted) ("[T]o succeed on a supervisory liability claim, Plaintiff must show that 'a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'"); *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) ("[A] supervisor cannot be held liable simply because he or she was

11

charged with overseeing a subordinate who violated the constitutional rights of another. . . . Consequently, a mere failure to act will not suffice to establish supervisory liability.").

The Court GRANTS summary judgment to McInchak on plaintiffs' Fourth Amendment claims.

### iii.  Unlawful Entry Claim against Individual Defendants

Defendants say they are entitled to summary judgment on this claim because plaintiffs fail to cite case law supporting the proposition that police officers "enter" a home without a warrant if their bullets enter and they do not.

The Court agrees.  Plaintiffs offer no law showing this claim is viable, let alone that the right is clearly established.  *See al-Kidd*, 563 U.S. at 735.

The Court GRANTS summary judgment to the Individual Defendants on plaintiffs' unlawful entry claim.

### C.     Count IV:  Municipal Liability (against Gibraltar and Trenton)

To hold a municipal defendant liable, a plaintiff must: "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that [his or her] particular injury was incurred due to the execution of that policy."  *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 403 (6th Cir. 2010).

### i.  <u>Gibraltar</u>

Plaintiffs say Gibraltar was deliberately indifferent to their rights because the city failed to provide body cameras, an internet based 911 system, and other police equipment, and that "the inadequate equipment that [Gibraltar] utilized led to the events of May 10, 2019."

Gibraltar is entitled to summary judgment for several reasons: (1) plaintiffs cite no law requiring body cameras, internet based 911 systems, or other particular equipment; (2) plaintiffs present no evidence of a causal connection between an alleged policy or custom of Gibraltar and their injuries; and (3) because McInchak did not violate a clearly established right, it follows that his employer – Gibraltar – is also entitled to summary judgment, *see Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 511 (6th Cir. 2012).

### ii.  <u>Trenton</u>

Plaintiffs claim that Trenton was deliberately indifferent to Driscoll's lack of training and lack of supervision because this was Driscoll's second shooting within his first five years as an officer.

This claim fails.  Plaintiffs fail to identify a municipal policy or custom, much less show that they suffered injury because of that policy or custom. *See Vereecke*, 609 F.3d at 403.

Moreover, Driscoll's prior shooting did not involve a constitutional violation.  There, Driscoll shot a suspect standing over him after the person struck and injured him with a lawnmower blade. The prosecutor's office concluded that Driscoll acted in self-defense.  There are simply no similarities between these two shootings.

Plaintiffs' municipal liability claim against Trenton fails as a matter of law.

**D.    Counts VI – IX:  State Law Claims (**against Baugh, Driscoll and Trenton)

Plaintiffs bring state law claims for assault and battery, intentional infliction of emotional distress, false arrest and imprisonment, and gross negligence.

Defendants say plaintiffs' gross negligence claim must be dismissed because it is premised on the same allegations as their assault and battery claim, which Michigan law prohibits.  They are correct.

Michigan courts prohibit plaintiffs from transforming claims involving elements of intentional torts into claims of gross negligence. *See Wells v. City of Dearborn Heights*, 538 Fed. Appx. 631, 641 (6th Cir. 2013).  In *Wells*, the Sixth Circuit held that a plaintiff's gross negligence claim against a police officer is barred because it arose from the same intentional acts as the plaintiff's assault and battery claim.  *Id*. at 642.

14

Since, plaintiffs' gross negligence claim involves the same conduct that gave rise to their assault and battery claim, it is barred. *See id.* at 641-42.

Defendants claim they are entitled to governmental immunity on plaintiffs' three intentional tort claims.

Lower-ranking governmental employees – like Driscoll and Baugh – are entitled to governmental immunity for intentional torts if they show: (1) "[t]he acts were undertaken during the course of employment and [he] was acting, or reasonably believed that he was acting, within the scope of his authority"; (2) "the acts were undertaken in good faith, or were not undertaken with malice"; and (3) "the acts were discretionary, as opposed to ministerial." *Odom v. Wayne Cnty.*, 482 Mich. 459, 480 (2008). The good faith element is subjective in nature; it protects a defendant's honest belief and conduct taken in good faith with the cloak of immunity – while exposing to liability a defendant who acts with malicious intent.  *Id.* at 481-82.

Baugh and Driscoll establish each of the elements for immunity: they acted during the course of their employment; they acted, or reasonably believed they acted, within the scope of their authority; the acts were discretionary; and they acted in good faith, or without malice.

Plaintiffs speculate that the jury could find that the officers simply fired into their home with malice.  However, the good faith element is subjective in nature, and the only evidence in the record is that the officers believed they were acting reasonably and appropriately.  Plaintiffs fail to present evidence showing that the officers did not act in good faith and/or any evidence that they acted with malice.

Baugh and Driscoll are entitled to governmental immunity on Counts VI – VIII.  *See Odom*, 482 Mich. at 481 ("A police officer [is] entitled to immunity . . . if he acted in good faith and honestly believed that he had probable cause to arrest, even if he later learned that he was mistaken.")

Trenton is also entitled to immunity on Counts VI – VIII.  *See Moser v. City of Detroit*, 284 Mich. App. 536, 538 (2009) ("A governmental agency is generally immune from tort liability 'if the governmental agency is engaged in the exercise or discharge of a governmental function.'" (quoting Mich. Comp. Laws § 691.1407(1))).

The Court GRANTS summary judgment on Counts VI – IX.

## V.    CONCLUSION

The Court: (1) **GRANTS IN PART** and **DENIES IN PART** Baugh's motion for summary judgment [ECF No. 54] and Driscoll and Trenton's

motion for summary judgment [ECF No. 61]; and (2) **GRANTS** McInchak

and Gibraltar's motion for summary judgment [ECF No. 60].

     The Court **DISMISSES** all claims except plaintiffs' excessive force

claim against Baugh and Driscoll.  This is the only claim that will go to trial.

     **IT IS ORDERED**.

s/ Victoria A. Roberts

Victoria A. Roberts

United States District Judge

Dated:  June 3, 2022